NATHAN SEELEY, Respondent, *against* THE NEW YORK NATIONAL EXCHANGE BANK OF NEW YORK, Appellant.

(Decided June 3d, 1878.)

Where a national bank, under the provisions of the statute (U. S.·Rev. Stat., § 5143), reduces the amount of its capital stock, it must return to the stockholders the whole of the capital set free by such reduction, and cannot retain a portion of it for use as a surplus fund, or for other purposes; and so much of a resolution of the stockholders providing for a reduction of the capital stock as requires stockholders to relinquish a *pro rata* amount of their shares to correspond to the reduction, upon payment of less than the amount of their interest in the capital thus set free, is illegal and void.

Where a complaint alleges facts showing a cause of action at law for damages, and

---

\* The judgment here was affirmed·by the Court of Appeals June 10th, 1879.

such damages are prayed for—although equitable relief is also asked for—and the case is tried without objection as an equity case, the court may award damages, although it gives no equitable relief. ·

APPEAL from a judgment for plaintiff, entered upon a decision rendered at the trial of the cause by the court, and upon the confirmation of the report of a referee to assess damages.

The action was brought by the plaintiff, as owner of twenty-five shares of the full paid capital stock of the defendant, upon the following facts : A meeting of the stockholders had passed a resolution that the capital stock be reduced from $500,000 to $300,000 by returning $100,000 to the stockholders, and that the latter be required to relinquish two-fifths of their stocks *pro rata*, according to their amounts. The plaintiff asked that so much of said resolution as required him to relinquish two-fifths of his stock upon receiving in cash only one-fifth of the amount of his stock be declared void ; that the defendant be directed, upon the surrender of plaintiff's certificate for his shares, to issue to him a new certificate for three-fifths of the amount, and to pay the plaintiff the two-fifths of said stock, that is, ten shares of $100 each, in cash, and that plaintiff have damages,—which were laid in the amount of $1000.

At the trial of the issues the court adjudged void the said portion of the resolution, directed an assessment of the value of the fifteen shares, and directed judgment for the value of the whole twenty-five shares, on the ground that they had been converted by the defendant's refusal to transfer them on its books, and that judgment for a less number of shares would not afford plaintiff complete redress, since the defendant might refuse to issue a new certificate for the fifteen shares.

The referee reported that the value of the fifteen shares was $1500, and upon the confirmation of his report judgment for the plaintiff for the value of all his shares was entered.

The following opinion was delivered at special term by VAN HOESEN, J. :—

"Section 5143 of the Revised Statutes of the United States provides that a national banking association may reduce its capital stock. The principal question in this case is, whether a national bank may, after reducing the amount of its capital stock, retain, as a surplus or for other purposes, the whole or any portion of the money which it received for the stock that is retired. The defendant reduced its capital stock from five hundred thousand to three hundred thousand dollars. What is to become of the two hundred thousand dollars which was subscribed and paid for the stock that has been called in? Must it be paid to the stockholders who surrender the retiring stock, or may it be retained by the bank? A certificate of stock is merely the evidence of an interest in dividends, as they are declared, and of a right to a *pro rata* distribution of the effects of the corporation on hand at the expiration of the charter (Angell & Ames, 8th ed., on Corporations, sec. 560). If the defendant had determined to discontinue business and wind up its affairs, there is no doubt that the shareholders would be entitled to a distribution of whatever assets of the corporation might remain after its debts had been paid. If, instead of surrendering all its corporate powers, a corporation, by reducing its capital stock, relinquishes a portion of them, it seems to me that the shareholders may properly claim a distribution of the money which the corporate body has no longer the right to use as capital. The abandonment by a corporation of all its corporate rights gives the stockholders a right to the distribution of all the net assets. Why should not an abandonment of a portion of those rights give the stockholders a right of distribution *pro tanto?* Of course, if the capital stock has been impaired, the amount to be returned to the stockholders must be diminished.

"It is said that the capital of the defendant has not been impaired, but that the directors deem it advantageous to retain as a surplus one-half of the amount which was subscribed and paid for the stock which has been called in. The reason assigned is not, in my opinion, any justification for withholding from the plaintiff his share of the money that

was paid in exchange for the stock that is retired. That money was paid as capital, and if it be no longer needed for that purpose, and if it be not required for the payment of debts, it has accomplished the end for which it was subscribed, and it ought to be returnêd to the shareholders. The bank has gone out of existence as a corporation with a capital of $500,000. Under a modified charter, it commences a new life with a capital of $300,000. So far as the $200,000 of reduced stock is concerned, the corporation must be considered as having surrendered its charter and wound up its business. This being so, there is no doubt as to the duty it owes to the stockholders who own the retired stock.

" The able counsel for the defendant insists that it is discretionary with the directors either to return the money to the shareholders, or to retain it as a surplus ; and that by retaining it, the bank does the plaintiff no injury, inasmuch as his shares will increase in market value as they diminish in number, and he will own one two-hundredth part of the new capital stock, just as he owned one two-hundredth part of the old capital stock. It is true that his proportion of the capital stock will relatively be as great as before the reduction ; but it is altogether matter of conjecture as to the future market value of a share of the reduced stock. The return of the reduced capital to the shareholders is not, however, a subject for the exercise of a director's discretion.

" If the retired capital be a liability of the corporation in favor of the shareholders who give up the stock that is called in, the payment of that debt cannot lie in any man's discretion. Payment cannot be deferred because the directors believe it for a creditor's advantage to keep him out of his money.

" When a dividend has once been declared, the directors cannot afterwards refuse to pay it, because they have determined to establish a surplus fund with a view to benefit the corporation and its stockholders. The dividend, when declared, becomes a debt, and cannot thenceforth be disposed of without the consent of him who is entitled to it. (*Beers* v. *Bridgeport Spring Co.*, 2 Weekly Digest, 8.) It would be

strange if capital—capital which has accomplished its mission—could be diverted from its owners, and used against their protest to build up a surplus fund, when even a dividend, once declared, cannot be.

"The controversy in this case really is, whether or not the defendant should be compelled to pay the plaintiff the value of five shares, the amount which the directors have determined to retain as surplus. If ordering judgment for the value of those shares would bring the litigation to a close, I should go no further than to make such an order. But it appears to be necessary to provide for the indemnification of the plaintiff for the loss of his twenty-five shares, the transfer of which the bank refused to make upon its books. If I should order judgment merely for the value of the five shares, it is possible that the defendant would refuse to give the plaintiff a new certificate for fifteen shares, and to pay him the five hundred dollars which the directors have ordered to be paid to those who consent to relinquish two-fifths of their shares. To give the plaintiff complete redress, it seems to me to be necessary to order judgment for the value of the whole twenty-five shares. The defendant is liable for that value, having refused to permit the shares to be transferred upon its books. I desire that the counsel for the defendant be served with a copy of the proposed findings."

*John L. Brower*, for appellant. The reduction was in conformity with the statute. (R. S. of U. S. p. 998.) The plaintiff suffered no injury by the bank's retaining the $100,000 as a reserve fund. The action asked equitable relief, when the plaintiff's remedy, if any, was for conversion, and the court had no right to give damages for conversion, as the defendant was entitled to a trial by jury. (6 Hill, 243 ; 10 Johns. 484 ; 20 Wend. 91 ; Constitution of New York, art. 1, sec. 2 ; 40 N. Y. 504.)

*Childs & Hull*, for respondent. On the reduction of the capital stock from $500,000 to $300,000, the purpose for

which plaintiff subscribed and paid his money had, to the extent of the reduction, failed, and he was therefore entitled to have refunded to him his *pro rata* share of the amount of such reduction. (9 How. 436.)

LARREMORE, J.—The questions involved in this appeal are :—

1. The right of a national banking association, incorporated under the act of June 3, 1864 (U. S. Rev. Stat. p. 998), to retain as surplus the moneys received for stock which is subsequently retired.

2. The right to recover damages in an action claimed to be purely equitable in its nature.

The opinion of the judge at special term conclusively settles the first point in plaintiff's favor.

The plaintiff's right to recover damages in this case is settled by authority. *Bradley* v. *Aldrich* (40 N. Y. 504) is not opposed to this theory, but holds that where damages are not sought in an equity suit none will be allowed, for the reason that the defeated party did not have an opportunity to try such an issue in the mode prescribed by law.

In *The Bank of Attica* v. *The Manufacturers' & Traders' Bank* (20 N. Y. 501) it was held that for a refusal to transfer stock the purchaser was not restricted to an action to compel the transfer, but could sue for damages; and in *Sternberger* v. *McGovern* (56 N. Y. 12) the doctrine is affirmed that, where the facts show that a party is entitled to both legal and equitable relief, failure to establish his right to the latter does not defeat it as to the legal remedy.

I differ in opinion, however, from the learned judge that the plaintiff should have judgment for the value of the whole twenty-five shares. All the damages he prayed for in his complaint were $1000, the value of the shares retired. To allow him any other or greater relief would be inequitable and possibly unjust to the other stockholders.

The judgment should be modified in this respect by allowing the damages, which were legally and properly

awarded, for the five shares, and that the bank, upon demand, issue stock for the fifteen shares.

If it refuse, plaintiff then has his remedy at law or in equity.

CHARLES P. DALY, Ch. J., concurred.

Ordered accordingly.*

* The decision here was affirmed by the Court of Appeals on September 16th, 1879.