DETERMINED IN THE

# THIRD DEPARTMENT,

AT

# GENERAL TERM,

## May, 1885.

CAROLINE W. LAWRENCE, Individually and as Executrix and Trustee under the Will, etc., of HENRY LAWRENCE, Deceased, and Others, Appellants, v. THE SARATOGA LAKE RAILWAY COMPANY, Respondent.

*Facts admitted by stipulation need not be proven — when a party cannot dispute the title under which he claims — specific performance of a contract to build a bridge or railroad station — when it is not too indefinite to admit of specific performance — when a railroad will be compelled to perform an agreement to stop at a station — power of the court to award damages on denying a specific performance.*

During the pendency of this action, brought to compel the specific performance of an agreement relating to the sale of real estate, the original plaintiff died. Thereafter, upon a stipulation signed by the defendant's attorneys admitting that the present plaintiffs had succeeded to the interest of the deceased plaintiff, an order was entered reciting the fact of such succession and substituting them in his place.

*Held,* that it was not necessary for the present plaintiffs to show upon the trial that they had succeeded to the title of the original plaintiff.

The defendant took possession of the land under an agreement made with the original plaintiff, and still continued in possession by virtue thereof.

*Held,* that it could not dispute the validity of the plaintiff's title or insist upon proof establishing the same.

The defendant entered into possession of land belonging to the plaintiff, under two written propositions made by the plaintiff, at the request of the defendant's agent, and constructed tracks and structures thereon so that the land could not be restored to the plaintiff in its original condition.

*Held,* that the court might compel specific performance of the contract by the defendant, although no written contract had been signed by the defendant.

By the terms of the propositions, so accepted by the defendant, it was provided, among other things, that a bridge should be by the defendant "constructed and maintained over railroad at old highway at my (plaintiff's) east line."

*Held*, that as there could be no difficulty in determining where the old highway was, and as it was apparent that a bridge, suitable for a highway crossing, was what was intended by the parties, the contract was sufficiently definite and certain to enable the court to decree a specific performance thereof.

The defendant was further required thereby "to construct and maintain a neat and good bridge near the west end of what is described on map as 'potato field' for an 'overhead' drive across" its road.

*Held*, that the failure to specify the size of the bridge, and the materials of which it was to be constructed, did not render the contract so indefinite and uncertain as that its specific performance could not be decreed.

The contract further provided that the defendant should "simultaneously with the construction of said railroad, erect at or near the Excelsior spring, owned by me (the plaintiff), a neat and tasteful station building for the accommodation of passengers to and from said spring, which shall be a regular station of the road, and all regular trains shall stop at said station, the name of which shall be 'Excelsior Spring Station.'"

*Held*, that the defendant could and should be compelled to specifically perform the said agreement.

That although under the agreement the defendant could not be compelled to run trains upon its road, yet it might properly be enjoined from running any regular trains which did not stop at the station.

The cases holding that, where a specific performance cannot be granted, the court may retain the case and award to the plaintiff the damages he has sustained, collated per LEARNED, P. J.

APPEAL from a judgment entered at a Special Term dismissing the complaint in this action.

The action was brought to enforce the specific performance of a contract made by the defendant with the plaintiff's testator for the purchase of lands, now occupied by the defendant with its railroad tracks. In July, 1880, Henry Lawrence was the owner of a tract of land in the north-east part of the village of Saratoga Springs, upon which was situated his residence, a large boarding-house known as the Mansion House, a mineral spring known as the Excelsior Spring, with its bottling-houses and appurtenances and other improvements.

The Saratoga Lake Railway Company desired to acquire a right of way through these premises, and prepared a map showing their proposed route and the land they desired, amounting to about four and a-half acres, and asked Mr. Lawrence for a proposition, in writing,

of the terms upon which he would give such right of way to the company.

Mr. Lawrence then gave to W. L. Burt, the defendant's agent, an instrument which provided, among other things, as follows : " For and in consideration of the sum of one dollar, the receipt of which is hereby acknowledged, I, Henry Lawrence, of Saratoga Springs, N. Y., do hereby agree to convey to William L. Burt the right of way, sixty-six feet in width, through my lands in the valley from East avenue to my east line — to lay and construct a double track railroad from the village of Saratoga Springs to Saratoga Lake upon the following conditions, however :

" Said Burt shall, simultaneously with the construction of said railroad, erect, at or near the Excelsior Spring owned by me, a neat and tasteful station building for the accommodation of passengers to and from said spring, which shall be a regular station of the road, and all regular trains shall stop at said station, the name of which shall be ' Excelsior Spring Station.' "      *      *.      *

That thereafter the said William L. Burt, for and on behalf of the said defendant, and on or about the 28th day of August, 1880, again applied to the said Henry Lawrence and stated to him, in substance, that the said defendant had concluded to build said railroad under the grade of Spring avenue, at the same time showed and delivered to him a map prepared in the office of and signed by the chief engineer of said defendant, representing the proposed line of said railroad across the lands of said Lawrence, which is the same on which said railroad was afterwards built, and which map was dated August 28, 1880, and entitled " map of the lands of the Excelsior Spring Company proposed to be taken by the Saratoga Lake Railway Company," and asked said Lawrence to give him a proposition, in writing, of the terms and conditions upon which he would consent to the modifications of the terms and conditions contained in the paper dated July 31, 1880, so as to allow the said railroad to be built under the grade of Spring avenue as aforesaid, and on the line designated on said map. Upon said map, when so delivered, a point on the said lands of said Lawrence, outside of but near to the line of said proposed railway, was designated " depot and station." The said Lawrence, pursuant to the request of the said William L. Burt, mentioned in the last finding,

prepared and delivered to the said Burt a proposition, in writing, of the terms and conditions on which he would consent to the modification of the said paper, dated July 31, 1880, in the respect above mentioned, which proposed modification is the following, among others, viz. : "You are to construct and maintain a neat and good bridge, near the west end of what is described on map as 'potato field,' for an 'overhead' drive across your road. Spring avenue is to be terraced or sloped from a line two feet west of present footpath, so as not to injure said footpath or the double row of trees. * * * The present footpath to, remain as it is, except at the crossing of railroad, where neat and suitable steps are to be constructed and maintained by the said Burt or assigns, leading from each side up over the railroad bridge and down to the station. If desired, a bridge is to be constructed and maintained over railroad at old highway at my east line."

The defendant accepted these propositions and entered into the possession of the described right of way ; commenced building their road with its cuts and embankments, and have since finished it.

The defendants failed to complete the work on Spring avenue as provided in the contract, but left it in such a rough, unsafe and improper condition that Mr. Lawrence was compelled to expend $3,194.40 to put it in the condition required by the contract. The court held that the plaintiffs were entitled to recover this amount. The defendant has wholly neglected to erect a station-house or stop its trains as required by the contract, and has neglected and refused to build bridges for crossing at two of the places designated in the contract. The defendant has so altered and changed the face of the property, by digging ditches, building embankments, cutting down trees and changing water courses, that the premises cannot be restored to their former condition.

The court found, among other conclusions of law, that damages would not adequately compensate plaintiffs for defendant's failure to fulfill the said agreement, and justice and equity required that the same should be specifically performed by the defendant. That the agreements referred to in the finding are so indefinite and uncertain, and relate to the performance of business of such a nature and continuance, that the court cannot direct specific performance. That the plaintiffs' complaint should be dismissed, without costs and

without prejudice to any action or proceeding that plaintiffs, or any of them, may see fit to institute by reason of any of the matters which have come in question in this action.

*Charles S. Lester*, for the appellants.

*A. Pond*, for the respondent.

LEARNED, P. J.:

The objection that the present plaintiffs have not the title to the land, or did not succeed to the title of Henry Lawrence, is not well taken. After his death pending the action, a stipulation was signed by defendant's attorney that the present plaintiffs had succeeded to his interests. And on that stipulation an order was made reciting the fact of such succession and ordering the substitution. That is sufficient. Nor is the objection well taken that Henry Lawrence is not alleged or proved to have been the owner in fee. No dispute arose on that point. The defendant took possession under him and by virtue of his title, and is in possession only by virtue of his title. When called on to perform its contract it cannot retain possession and deny his title.

The objection that the defendant did not sign any contract is not valid. The contract consits of two written propositions made by Lawrence at the request of Burt (who either acted for defendant or to whom the defendant succeeded). The defendant accepted the propositions and acted upon them, entering into the premises of Lawrence by and under the same. And the defendant has proceeded to construct its track and to do many other acts, making permanent changes upon the land; so that the land cannot be restored to plaintiffs in its original condition. These facts are a ground for the enforcement of a contract, although it is not in writing. The reason is, that it would be a fraud for the vendor to permit the vendee, under a verbal contract, to make permanent improvements, and then to deprive the vendee of the land by ejectment. And rights must be mutual. If then a vendor cannot refuse performance when the vendee has entered and made improvements; conversely the vendee cannot refuse to perform in such a case, on the ground that the contract was verbal.

Again, it is true that a verbal contract must be definite in order to

entitle either party to specific performance. An indefinite contract cannot be enforced, because the courts do not know what the parties agreed to. In the present case the contract is in writing. It is distinct and definite. The situation of the road was indicated in a map given in evidence. The circumstance that this map is not attached to the judge's decision did not prevent him from taking it into consideration, and from giving a judgment based upon the map and the other evidence.

The learned justice found that the defendant had neglected and refused to perform three things, which, by the terms of the contract, it was plainly bound to do. He held that damages would not adequately compensate the plaintiffs for this neglect and refusal, and that equity required that the contract should be specifically performed; that unless the whole contract could be specifically performed, no decree for specific performance of a part could be made; that the agreements as to those three things were so indefinite and uncertain, and related to business of such a nature and continuance, that specific performance could not be adjudged. He dismissed the complaint without prejudice to any action by the plaintiffs.

One of the three things was to construct and maintain a bridge over the railroad at the old highway at Lawrence's east line. We see nothing indefinite in this. There can be no difficulty in determining where the highway is. To insist that the railroad cannot build a bridge because they do not know whether it should be of wood, or iron, or gold, or platinum, is a poor excuse. A bridge suitable for a highway crossing is what is intended, and that is definite enough. (*Jones* v. *Seligman*, 81 N. Y., 190.) If defendant were willing to perform its agreement, it would have no difficulty in understanding its obligations.

Another thing to be done is similar: to construct and maintain a neat and good bridge near the west end of the potato field, for an overhead drive over the railroad. It is not shown that the situation of the potato field cannot be determined, or that there is doubt which is its west end. Indeed, by the opinion of the learned justice it appears that the map given in evidence gave the places where the bridges were to be placed. But the defendant's objection, is that the size and material are not specified. We do not see why

proof might not be given as to the size and material suitable and proper for bridges at those places, and for the purposes indicated. It is often the case that proof of surrounding circumstances is needed to explain a contract. The learned justice, in his conclusions, holds that the defendant is bound by the provisions of the contract, and can only hold the land by performing its agreement, and that justice and equity requires that these provisions should be specifically performed. But if these provisions are so indefinite that the court cannot decide whether or not a pretended performance is a real performance, then how can the defendant be bound? We have these two alternatives: either the agreement is so indefinite that the court cannot determine when it has been performed. In that case it is void, and the defendants must surrender up the land. Or it is definite enough for the court to decide whether it has been performed. In that case defendants should be made to perform, unless there be some reason to the contrary. Plainly the defendant, who has taken possession of the land under this contract, cannot be permitted to say that the contract is so indefinite that the defendant cannot perform its side of the contract, but that without performing the defendant will keep that land for which the performance of the contract was the consideration.

The third thing to be done by defendant was to erect at or near Excelsior Spring a neat and tasteful station building for the accommodation of passengers to and from said spring, which should be a regular station, and to have all regular trains stop at said station; the name to be Excelsior Spring Station.

The same argument in regard to this building is urged by defendant, viz.: that the words "a neat and tasteful station building for the accommodation of passengers to and from said spring," are too indefinite. But it is found as a fact that the defendant has built station buildings for similar purposes; one about 4,000 feet east and the other about the same distance west of the spring. Would there be any difficulty on defendant's part in building one at the plaintiff's spring? And would it not be easy for a court or a jury to decide whether a building was a fair and reasonable performance of this agreement, or was a fraud and an evasion?

It is urged that equity will not enforce specifically a contract to build or repair. (See Story Eq., § 726, etc.; *Beck* v. *Allison*, 56

N. Y., 366; Pomeroy's Eq., § 1402*n.*) Of course, the evident reason of this rule is that usually damages are a sufficient remedy. The plaintiff can build or repair, and sue for the amount expended. But there are instances where the reason does not exist; and where the plaintiff cannot himself build or repair; and in which damages would not be sufficient. Mr. Pomeroy, in his note, makes four classes of exceptions; the second is where the defendant has contracted to construct some work on his own land, and the plaintiff has an interest which cannot be compensated in damages. An instance is *Storer* v. *Great Western Railway Company* (2 Y. & C., 48). The third is where the defendant has contracted to construct works on land acquired from the plaintiff, and the fourth is where there has been a part performance so that the defendant is enjoying the benefits *in specie.* This is illustrated by the case of *Stuyvesant* v. *Mayor* (11 Paige, 414). Mr. Fry makes similar exceptions. (Fry's Specific Perf., § 81.)

In the present instance every one of these three exceptions is combined. The contract has been so far performed that the defendant is enjoying the land itself The land was obtained from the plaintiff upon the agreement to make this building; and the building is to be made upon the defendant's own land (that is land which belongs to defendant in equity, and of which it is in possession), and the plaintiff has a material interest not susceptible of compensation in damages. The plaintiffs cannot build the station building or the bridge, because defendant is in possession. And it is evident that to estimate plaintiffs' damages is exceedingly difficult. Plaintiffs have a spring, to which they desire that passengers shall come. How is it possible to estimate how many, who would come if there were a station building, do not come when there is none?

In addition to the case above cited we may refer to *Lytton* v. *G. N. R. W. Co.* (2 Kay & J., 394); *Greene* v. *W. C. Ry. Co.* (L. R., 13 Eq., 44); *Sanderson* v. *Cockermouth, etc., Ry. Co.* (11 Beav., 497).

The case of *Wilson* v. *Northampton and B. J. Ry. Co.* (L. R., 9 Ch. App., 279) is instructive on account of the reasons given for refusing specific performance. In that case there was an agreement to " erect, set up and construct a station," and the defendant violated the agreement. The court held that it had jurisdiction; but

that as there was no agreement respecting the stopping of trains, it might be of no benefit to decree specific performance ; that the plaintiff would have better redress by way of damages ; that a jury might take into account the probability that the defendant would have used the station and the probable benefits to plaintiff's estate ; and that the court in assessing damages could do the same. In the present case the agreement not only provides for building a station-house, but also provides that all passenger trains shall stop there. Thus the case of *Wilson* v. *N. and B. J. Ry. Co.* becomes an authority in plaintiffs' favor.

The defendant urges that the whole contract must be enforced, or no part of it will be. That rule does not apply where the part which cannot be enforced is separable from the other. Where a vendor is unable to completely perform his contract, it is true that the ordinary rule is that the vendee will not be compelled to accept a part. Yet even to this rule there are exceptions, notably when one part is separable from the other. (*Ogden* v. *Fossick*, 4 DeGex., F. & J., 426 ; *Powell* v. *Elliot*, L. R., 10 Ch., 424 ; *Wilkinson* v. *Clements*, L. R., 8 Ch. App., 96.) But, on the other hand, when the vendee claims performance and the vendor is unable to make complete performances, the vendee is allowed to have all he can get, with compensation for the deficiency. (*Morss* v. *Elmendorf*, 11 Paige, 277.) The principle is, that the party who is not in fault shall be entitled to a specific performance of as much of the contract as the other can perform. Here the plaintiffs are not in fault, and the defendant willfully refuses to perform. There is no reason why the court should not compel a specific performance so far as this can be done. (Story's Eq., 774, 779 ; Pomeroy's Eq., § 1407 *n.*) A further matter is the agreement to stop all passenger trains at this station. Some objection has been made to the granting of specific performance where the contract requires continuous personal action running through an indefinite period of time. (*Marble Co.* v. *Ripley*, 10 Wall., 339.) But the propriety of granting this relief in a case like the present was recognized in *Phillip* v. *Great Western Railway Company* (L. R., 7 Ch. App., 409). Although it was held that a train carrying mails was not " under the control " of the company, and, therefore, the relief was denied. (See, also, *Rigby* v. *G. W. Ry. Co.*, 2 Phillips, 44.)

In the case of *Blanchard* v. *Detroit, etc., Railroad Co.* (31 Mich., 43), cited by defendant, the court held that the clause in the deed relied upon by plaintiff was only a condition subsequent, not a covenant. Having decided that there was no covenant on the part of the defendant, they proceeded *obiter* to say that the court would not grant specific performance of a covenant to build a depot, and to stop at it at least one train a day. In the cases of *Port Clinton Railway Company* v. *Cleveland and Toledo Railway Company* (13 Ohio State, 544); there were two actions, and the court held that neither plaintiff had such a standing as to support its claim for relief. In *McCann* v. *South Nashville Railroad Company* (2 Tenn. Ch., 773), it was held that there was no contract to run cars at proper intervals; that plaintiffs were not parties to the arrangement and that they had not contributed thereto. It will thus be seen that none of these cases are directly in point. And it may be noticed that there are instances in which courts do require defendants to do acts which run through a considerable time, as when they adjudge that a defendant pay alimony.

Further still, most final injunctions are perpetual. There is no difficulty in adjudging that a defendant shall not, for instance, erect a house above a certain height, where to exceed that height would interfere with plaintiff's easement. It is not thought to be any objection to that relief that its effect is to retain the action in court perpetually. Now, in the present case, it will be seen that the defendant did not agree to run any train whatever over its road. No decree of specific performance, requiring the defendant to run trains, is therefore needed, or asked for, or proper. All that is required is that the defendant be enjoined from running any regular trains which do not stop at this station.

Certainly there is seldom a case which calls more strongly for the active aid of the court than the present. A corporation gets possession of the plaintiff's land by his consent, and on terms to which they agree; it pays nothing for the land, and is spared the trouble and expense of proceedings to condemn; and then, when in possession, it refuses to perform the things it agreed to do. And it makes no excuse whatever. It seems to hope by delays and technicalities to weary out the perseverance of the present plaintiffs, as it has succeeded in making this action outlive the original

plaintiff. The case is another instance showing that the managers of corporations will unblushingly do what, in an individual, they would at once condemn as rank dishonesty.

· The Special Term was of the opinion that the relief of specific performance could not be granted, and dismissed the complaint without awarding damages. In the view we take it is not necessary to decide whether the court can award damages, when it is of the opinion that specific performance cannot be had. That was the course taken in *Wilson* v. *N. and B. J. R. Co.* (*ut supra*). (But see Story Eq., § 794 *et seq.; Beck* v. *Allison*, 56 N. Y., 366; *Henderson* v. *N. Y. C. R. R. Co.*, 78 id., 423; *Matthews* v. *D. and H. Co.*, 20 Hun, 427; Code §§ 968, 969; *Bradley* v. *Aldrich*, 40 N. Y., 504; *Seeley* v. *N. Y. Nat. Ex. Bank*, 8 Daly, 400; affd., 78 N. Y., 608.)

At any rate, whether or not there could be a recovery of damages in the ordinary meaning, it would be just and equitable to enjoin defendant from using the road over plaintiffs' land until it had paid the damages which plaintiffs have sustained in doing that which defendants ought to have done. This case comes to us only on the findings of the court, and the plaintiffs ask that we modify the judgment by giving the relief to which they are entitled. We do not think that this can properly be done. Evidence may be needed at the trial to explain the circumstances surrounding the agreement; the time needed for the construction of the bridges and station; the exact place as shown on the map, etc.

We therefore reverse the judgment and grant a new trial, costs to abide event.

Present — LEARNED, P. J., BOOKES and LANDON, JJ.

Judgment reversed, new trial granted, costs to abide event.