## PHELPS v. MAYOR, ETC., OF NEW YORK.

*(Supreme Court, Special Term, New York County. July, 1890.)*

**PRACTICE IN CIVIL CASES—DISMISSAL—FORM OF ACTION.**

A complaint demanded both equitable relief and a legal remedy. Plaintiff did not show any right to equitable relief, but his right to a legal remedy appeared, and the facts on which a recovery at law depended were put in issue by the answer. *Held*, that the supreme court sitting at special term would not dismiss the complaint, but would deny the equitable relief, and send the issues at law to the circuit for trial by jury.

Action by Frank Phelps against the mayor, etc., of the city of New York, to reform a lease, and for damages.

*Thomas E. Rochfort* and *Abram Kling*, for plaintiff. *Sidney Cowen* and *William H. Clark*, Corp. Counsel, for defendant.

PATTERSON, J. This cause was submitted on the pleadings, certain documentary evidence, a stipulation entered into between the parties as to some of the facts, and briefs of counsel. The suit is brought primarily for equitable relief, the prayer of the complaint being that an indenture of lease of dock property in the city of New York, of which the defendant is the lessor and the plaintiff the lessee, "be reformed by striking out" one of the provisions thereof, on the ground of mutual mistake of the parties in executing the instrument with that provision inserted therein. A recovery of damages is also demanded for the breach of a covenant under which the plaintiff claims the city was bound to make repairs, at the beginning of the term, to the premises in question. The leading facts are not in dispute. It appears that on or about April 30, 1881, the commissioners of the department of docks of the

city of New York leased to the plaintiff for the term of five years from May 1, 1882, at an annual rental of $9,000, the dock property mentioned in the complaint, and agreed to renew the lease for an additional term of five years, on receiving 90 days' notice of the plaintiff's desire to have such renewal, which was to be on the same terms and conditions, except that the rental was to be increased and no further covenant of renewal was to be made. The original lease, among other things, contained the following provisions: "And the parties of the first part [lessor] promise and agree that they will, prior to the commencement of the aforesaid term of years, or as soon after such commencement as shall be found practicable, make such repairs to the above-described wharf property as the said board of commissioners may consider necessary to put such wharf property in suitable condition for service during the aforesaid term. And the parties hereto promise, agree, and understand that no claim that said wharf property is not or was not at the time of the commencement of the said term in suitable condition for the use and purposes hereinbefore mentioned, shall or will at any time be made or allowed." The lessee, for himself, etc., also covenanted "that he will at all times during said term, except as hereinbefore agreed, put, keep, and maintain all the said wharf property, and every part thereof, and the structures thereon, in good and sufficient repair and condition, and will well and sufficiently dredge and keep dredged the slip or slips adjacent thereto, and that all such repairs, rebuilding, and dredging during said term shall be at the sole cost" of the lessee; and then follow conditions under which the lessor may make these repairs in default of the lessee so doing, and for forfeiture of the term. The plaintiff entered into possession under this lease, and in due time, before its expiration, gave the necessary notice requiring a renewal, and thereupon another instrument, granting a term of five years from May 1, 1887, was executed and delivered, and the plaintiff is now in possession thereunder. The provisions of this last instrument are (with the exceptions as to amount of rent and covenant of renewal) identical with those of the first lease. Those relating to repairs by the lessor and lessee, respectively, are in the same words in each instrument. By the stipulation entered into between the parties it appears that both claim and admit that the premises were not in a suitable condition at the commencement of the second, or renewal, term, and that a claim to that effect was made at the time of the execution of the second lease, and has ever since been made, and that the plaintiff has expended $15,021.02 for repairs, in and by which the whole property was put in a suitable condition for service during the aforesaid (the last) term, and that the same was a fair and reasonable amount expended therefor, and that the second lease was retained by the plaintiff for two days before he executed it.

No proof has been offered to support the allegation of the complaint that the provision sought to be expunged from the instrument, granting the renewed term, was inserted in that lease by mutual mistake, and there is nothing, therefore, before the court upon which it can act to give the equitable relief demanded. Further, it is apparent that there was no mistake of either party in the matter. The new lease was given in pursuance of a covenant in the former one by which it was expressly stipulated that a renewed grant should "contain like covenants as this present one, except the covenants of renewal, and except that the rent or compensation shall be $11,000 per annum." For five years and more the plaintiff knew that, if he acquired the additional term under his privilege to demand it, he must acquire it in accordance with the provisions which bound the parties to the same stipulations, other than the excepted ones, contained in the first grant. The city's obligation and his own as to repairs and the limitation of his right to claim anything concerning the condition of the premises at the commencement of the second term were to be the same as at the beginning of the first term, and no other. There is nothing to be reformed, therefore, in the lease now in force. It is just what

the parties intended and agreed it should be, and their respective rights and obligations under it are not to be governed by equitable considerations, but merely legal remedies are open. The plaintiff's own argument is inconsistent with the relief sought in equity. He asserts in the brief that, by a proper construction of the instrument, the covenant prohibiting a claim that the wharf property was not in a suitable condition for the purposes of the lease at the beginning of the new term is not incompatible with the express covenant of the lessor to make repairs conceded to be necessary at the beginning of the term to put the premises in suitable condition for use by the lessee. If that be so, and I think it is, the provisions of the lease do not conflict, and the interposition of a court of equity is not necessary, because the plaintiff's legal rights are not impaired nor obstructed. The inquiry, then, arises as to the power of the court in this cause, as the pleadings are framed, to construe the lease and render judgment as in a common-law action. The plaintiff claims that all the averments of the complaint and the prayer looking to equitable relief may now be disregarded, and that, a legal cause of action being stated, and a demand of damages also made, a full determination may now be had. The question may be thus formulated: Where a plaintiff asks for equitable relief, but does not show a right thereto, and the complaint shows facts which may entitle him to a legal remedy, and that remedy is also demanded, and the defendant's answer puts in issue the facts upon which a recovery at law depends, is it competent for the court, sitting at special term, to retain the legal cause of action, or must the complaint be dismissed? The supreme court, with its general jurisdiction both at law and in equity, has full cognizance of the whole cause; but the remedies afforded, as applicable to either branch of its jurisdiction, are separately administered in different and differently constituted parts of the court. Equitable relief is granted by a judge alone, sitting as a chancellor, under modified proceedings as to the taking of testimony. Legal remedies are allowed as at common law in the circuit court, which is a common-law court presided over by a justice of the supreme court, and it is, "according to the course and practice of the court," a branch of the supreme court, although in the enumeration and classification of courts in the statute (Code Civil Proc. § 2) it is mentioned as a separate court. Where a complaint sets forth merely a cause of action in equity, and equitable relief only is asked, even if the proofs show a right to a legal remedy, the plaintiff cannot obtain it in that action; and so, where a complaint is drawn only as in a common-law action, equitable relief cannot be granted to the plaintiff in that action. The clear distinction between equitable and legal causes of action, and the remedies appropriate to them, still exists, and a recovery must be had *secundum allegata et probata*. This has been stated in many reported cases, among them *Heywood* v. *Buffalo*, 14 N. Y. 540; *Bradley* v. *Aldrich*, 40 N. Y. 504; *Mann* v. *Fairchild*, *41 N. Y. 111; *Peters* v. *Delaplaine*, 49 N. Y. 362; *Graham* v. *Read*, 57 N. Y. 681; *Stevens* v. *Mayor, etc.*, 84 N. Y. 296; *Gould* v. *Bank*, 86 N. Y. 83. But there is another class of cases, relating to a complaint stating facts, which, if proven, would entitle a plaintiff to either equitable relief or a legal remedy, and in those cases it has been held that, the averments of the complaint being broad enough, and the demand for judgment being appropriate, the action being presented in a double aspect, the court will retain it, and upon denying equitable relief will allow the parties, on the pleadings as they stand, to test their legal rights in the proper way: *Sternberger* v. *McGovern*, 56 N. Y. 12; *Seeley* v. *Bank*, 8 Daly, 402, affirmed, 78 N. Y. 608. See, also, *Cogswell* v. *Railroad Co.*, 105 N. Y. 319, 11 N. E. Rep. 518. That proper way, in an action brought in the supreme court, is trial by jury in the circuit court, unless it is waived by consent or by omission in due time and manner to demand it, or, when authorized, a reference is ordered. In this case it might well be held that a jury trial has been waived by both parties, as it has been submitted by both, but

neither of them has presented to the court sufficient proofs to enable it to dispose of the whole controversy.

Omitting from consideration all that is alleged in the complaint tending only to the right to equitable relief, it appears that the corporation of the city of New York was the owner of the pier No. 40 East river, and of one-half of the adjoining bulk-head; that in April, 1881, by its duly-authorized agents the board of commissioners of docks, it leased that pier and the adjoining bulk-head to the plaintiff, and in that lease the covenants above recited were contained; that the plaintiff, personally or by his tenants, occupied the premises throughout the whole term of the lease; that he paid the rent and performed all the covenants of the lease on his part to be performed; that in particular he put, kept, and maintained the premises and every part thereof in good and sufficient repair and condition, and dredged the slips; that, before the renewal of the lease, the pier and bulk-head were old, and by May, 1887, notwithstanding the repairs that the plaintiff had put upon them, were in such condition that substantial repairs, amounting to partial rebuilding, were necessary to put them in a fit state for service during the term of the new lease, and that such repairs would cost $15,021.02; that both the lessor and lessee agreed that these repairs were necessary; that the plaintiff demanded of the defendant or of the dock commissioners, both before and after the renewed lease, that these repairs be made, and, the commissioners having refused or neglected to do so, the plaintiff made such repairs or rebuilding at his own expense; and that by reason of the failure of the commissioners to make these repairs he has been damaged to the amount expended for them, for which he demands judgment. The answer, while admitting most of the material facts, claims that the obligation to make the repairs referred to was upon the plaintiff, but by a general denial it puts in issue the allegation that the plaintiff, under the terms of the lease, made those repairs which he was bound to make during the first term. It may be, therefore, that the plaintiff's default in making the repairs he agreed to make, under the conditions of his first lease, has necessitated to a greater or less extent the substantial repairs or partial rebuilding of the structure to put it in proper condition at the commencement of the new term.

It is contended by the city that no liability to make repairs rests upon it because of the provision of the lease quoted, which states that no claim shall be made or allowed that the property was not, at the commencement of the term, in a suitable condition for the uses and purposes of the lease. There is no necessary inconsistency between that provision and the lessor's covenant as to repairs to be made by it. Taking them together, and applying to them the reasonable rule that construction will be given to avoid repugnancy where it is evident that each party intended to assume an obligation to the other, and the rights of neither will be invaded by such construction, and the court can see exactly what was contemplated, it would appear that both the lessor and lessee undertook something to be actively binding upon each with reference to repairs. The lessor agrees that, prior to the commencement of the term, or as soon thereafter as practicable, it will make repairs to put the property in suitable condition for service during the term; but this obligation is limited. The measure of the extent to which it undertook to make such repairs is the judgment of the dock commissioners as to what they consid. .ed necessary. On the part of the lessee the agreement is that no claim shall be made or allowed that the property is not, or was not at the commencement of the term, in a suitable condition for the uses and purposes of the lease. This is part of the same clause in which the lessor's obligation referred to is assumed, and it evidently means that if the dock commissioners decide that repairs such as are spoken of are necessary, and are made according to their judgment, or if they determine that no such repairs are necessary, all claim on the part of the lessee that the property is not, or was not at the beginning

of the term, in fit or suitable condition, shall be unavailing; but if they admit that such repairs are necessary, and the extent thereof is ascertained and admitted, the covenant to make them becomes operative, and the lessor is liable for the breach.

Apart from the provisions just considered, it is further urged by the defendant that the plaintiff agreed to keep the premises in repair during the term, and that hence he was bound to make all repairs; but the plaintiff's covenant in that regard relates to repairs, "except as hereinbefore agreed," and that refers to the repairs the lessor should make at the beginning of the term. All the lessee had to do was to make those repairs which would keep up the property in the condition in which he took it. If he took an old pier in condition to last during the term of the first lease, (and all the city was bound to do was "to put such wharf property in a suitable condition for service during the aforesaid term,") the lessee was not required, at the expiration of the term, to return to the lessor a structure in any better condition than when he got it, or one that would be suitable and in condition for future service during an additional term of five years, but he was bound to make all repairs to keep it in good condition for use until the day his lease expired; and if he did that, and notwithstanding it became evident, and was admitted by the lessor, that by deterioration the property had fallen into such a state that at the commencement of the new term it was not suitable for service during five more years of a renewed term, the lessor's obligation, under the terms of the new lease, as well as those of the original lease pursuant to which the renewed term was granted, committed the city to making such repairs. Whether the defendant was bound to make all the repairs for which the plaintiff expended $15,000 depends upon facts not now before the court. It is quite impossible to assess the damages. The defendant undoubtedly admits in the stipulation that $15,000 was necessary to put the property in suitable condition for service during the renewed term, but its answer denies that the plaintiff made all the repairs it was incumbent upon him to make during the first term, and it is important that all the facts should be presented, and that the court should know what was done by the lessee during the first term in making repairs, and whether any of the $15,000 was expended for repairs he was bound to make under his particular covenant relating thereto contained in the first lease. I do not consider the stipulation as foreclosing the city from making this inquiry.

So far as equitable relief is demanded, none can be awarded; but the cause will be sent to the circuit for trial as a common-law action for breach of the covenant of the city to put, at the beginning of the second term, the property in suitable condition for use during that second, or renewed, term.