Bayle Harper, Administrator of the Estate of John Harper, Deceased, Appellant, v. State Bank of Paw Paw et al., Appellees.

Gen. No. 9,340.

Opinion filed April 20, 1939. Rehearing denied May 22, 1939.

Dixon, Devine, Bracken & Dixon, of Dixon, for appellant; Robert L. Bracken and J. C. Ryan, of Dixon, of counsel.

Clyde Smith, of Dixon, for appellees.

Mr. Justice Huffman delivered the opinion of the court.

Mr. John Harper was a director of the State Bank of Paw Paw. The capital assets of this bank became impaired in 1931. In compliance with the requirements of the auditor's office, to render the bank solvent, two things were done. First, Mr. Harper and other directors placed their individual notes in the assets of the bank in lieu of certain notes therein to which the auditor objected. These objectionable assets were then removed and held for the benefit of the persons whose notes had been substituted therefor. The second step taken was a reduction of the capital stock from $100,000 to $50,000.

Mr. Harper died in 1933. Following his death, the bank filed his note as a claim against his estate, whereupon appellant administrator brought this suit in equity against the bank and certain of its officers to restrain the prosecution of its claim against the estate of the deceased, and for an accounting against the bank and other relief. It is urged by appellant that the deceased is entitled to credit on his note, for his proportionate part of the money that has been collected on the objectionable paper. It is further claimed by appellant that the deceased's note is entitled to be credited with his proportionate share of the assets of the bank which were charged out upon the reduction of its capital stock, pursuant to an alleged agreement claimed to have been had between the deceased and the officers of the bank, whereby all the assets, credits, money and property such bank should receive by the reduction of its capital stock would be so credited.

The trial court found that the action of the deceased and the other directors in placing their notes in the bank as aforesaid was in order to remove objectionable paper of a like amount, and done at the instance of the auditor's office; that no evidence appeared to show or prove that the officers of the bank at the time, entered into any agreement with the deceased to reimburse him from the assets of the bank for any losses he might sustain by reason of the giving of his note. It appears that the deceased secured his advice from the bank examiner, who was no agent or officer of the bank, and could not act either for the stockholders or the board of directors. The court denied the prayer for an accounting and set-off with reference to appellant's claim to an interest in the assets of the bank arising from the reduction of its capital stock. The court found that appellant was entitled to have the bank account to him for a proportionate amount of the money that had been collected on the bad paper. The plaintiff appellant was given leave to make additional parties to his complaint by amendment, consisting of the other note signers, so that upon a proper hearing and accounting, it could be determined what had been collected on the bad paper and the manner in which the same should be distributed. The bank was enjoined from prosecuting its claim against the deceased's estate until after such hearing and accounting.

Appellant has prosecuted this appeal from the decree of the trial court, urging that the court erred in denying relief against the assets of the bank, which arose from the act of reducing the capital stock, and in confining appellant's relief to a proportionate share of the money collected from the bad paper.

Appellant now urges on this appeal, that irrespective of any promise by the bank officers to permit Mr. Harper to share in the assets arising from the reduction of the capital stock, that the law is, where the capital stock of a banking corporation has been reduced, the assets

charged out of the corporation and created by such re-
duction of capital stock, are the property of the stock-
holders to which they are then entitled. In support of
this contention, appellant cites such authorities as are
found in Michie on Banks and Banking, Vol. 2, p. 8,
par. 8; and Vol. 7, p. 33, par. 30. These cases are all
national bank cases. Under the U. S. Code, Title 12,
sec. 59 (on banks), empowering a national bank to re-
duce its capital stock, it has been held that the capital
thus set free by such reduction, must be returned to the
stockholders in the proportion to their respective hold-
ings, and cannot be retained by the banking corpora-
tion. However, in this respect it is well settled that
such right of the stockholder to share in any such re-
duction, exists only in cases where the capital stock is
reduced without constraint, and that where the reduc-
tion of the capital stock is made to meet an impairment
thereof, the stockholders have no right to a distribu-
tion of any part of such funds. Michie on Banks and
Banking, Vol. 2, p. 11; Vol. 7, pp. 33, 34; and cases cited.

Where the capital stock of a bank is impaired, and a
reduction is made to meet such impairment, the effect
thereof is to escape an impending and threatened as-
sessment on stock, and for all practical purposes is the
equivalent of an assessment against the stockholders,
to be used to charge off worthless and doubtful assets.
Under such circumstances, the stockholders will not be
permitted to withdraw the depreciated assets which
were the cause of such impairment to the capital, and
bring about a distribution thereof among themselves.
7 Am. Jur. p. 50, par. 43.

Appellant in support of his contention, relies strongly
upon the case of *Jerome v. Cogswell,* 204 U. S. 1, 51
L. Ed. 343, 27 Sup. Ct. 241, taken from Michie, Vol. 7,
p. 34. In that case, however, the charter of the bank
had expired and the question raised was between the
stockholders of record at the time of the reduction of
the capital stock in 1900, and the stockholders of record

at the time of the expiration of the bank's charter, as to which group was entitled to the money that had been realized on that portion of the capital assets involved in the above reduction of the capital stock. The court in that case states: "As a general rule, it may be admitted that where capital stock is impaired and a reduction is made merely to meet that impairment, there can be no distribution." (51 L. Ed. 345.)

The assets of a bank are held by it, first, for the payment of its indebtedness, and second, for the distribution among its stockholders of remaining surplus. It may be conceded that if a bank reduced its capital stock without constraint, for the purpose of withdrawing a portion of the investment represented by the excess capital above the amount to which it was reduced, it may thereupon be entitled to a distribution of such assets among the stockholders. And for the most part, the courts concede that if a reduction of capital stock is duly made while the corporation is solvent and a going concern, the shareholders may compel a distribution among them as compensation for diminishing the amount of their share holdings. A reduction of capital stock operates equally on all stockholders, or, at least on all stockholders of the same class, and in this respect it has been held that an unequal and unfair distribution may be enjoined. *Niagara Shoe Co. v. Tobey,* 71 Ill. App. 250. But when such reduction of capital stock is involuntary, in the sense that it is necessary to meet a condition of impaired capital, it cannot then be considered an act done for the purpose of withdrawing a portion of the investment. It is obviously an act to meet an impairment of the capital structure, and a method employed in preference to a stock assessment. It is quite the opposite to withdrawing a portion of the investment by such method when the capital is intact and unimpaired.

The right of shareholders to compel a distribution of excess capital above the amount to which the stock

was reduced, is fixed by the condition of the corporation as it existed at the time of such reduction, and it is not to be determined in the light of subsequent events.

Here, this bank was in a failing condition. The reduction of its capital stock was insufficient to. place it in a liquid state, and in order to so shape the affairs of the bank that it might continue in business, Mr. Harper and his associates had to place their notes therein to the amount of $25,658.44, in order to remove from the assets a like amount of bad paper. Under such circumstances, its reduction of capital stock cannot be considered an act done for the purpose of bringing about any distribution of surplus assets created by such reduction.

We are of the opinion that the decree of the trial court in this case is correct and the same is hereby affirmed.

*Decree affirmed.*