JAY RONALD Co., INC., Suing on Behalf of Itself and all Other Stockholders of the Marshall Mortgage Corporation, Similarly Situated, Plaintiff, v. MARSHALL MORTGAGE CORPORATION et al., Defendants.

First Department, March 8, 1943.

*Harold L. Rosenstein* for plaintiff.

*Samuel A. Telsey* of counsel (*Telsey & Young,* attorneys), for defendants.

Cohn, J.  This is a controversy submitted upon an agreed statement of facts.

Since April, 1938, plaintiff has been the owner of 487 shares of the stock of defendant, Marshall Mortgage Corporation. The company was organized in the State of New York in 1926 with a stated and actual capital of $300,000. The total number of its authorized shares was, and still is, 100,000, all common stock without par value. The individual defendants are the officers and directors of defendant corporation.

On January 31, 1940, by proceedings duly taken the capital of defendant corporation was reduced from $300,000 to $100,000. When the reduction was effected there was no impairment in the original capital, the assets being of an actual value in excess of $300,000 over and above the liabilities, exclusive of the liability on the capital stock.

The stockholders had authorized the reduction at an annual meeting held on January 22, 1940, pursuant to a seasonable notice which had been sent to each of them advising that there would be considered " a proposal to reduce the capital * * * to $100,000, and to transfer the surplus resulting therefrom to an account to be known as the paid-in surplus, which shall be used for all purposes for which a surplus may be used." At the meeting a resolution authorizing the reduction of the capital and the transfer of the retired capital to a surplus account was duly adopted. Plaintiff, though present, refrained from voting. Thereafter and on January 31, 1940, a certificate of capital reduction was filed with the Secretary of State. The surplus of $200,000 thus created was then transferred to a corporate account designated as a surplus account.

Defendant corporation is engaged in dealing in real estate. At the time its capital was reduced, the corporate assets consisted principally of seven parcels of real estate and of numerous mortgages on real property. The holdings are in the nature of " frozen assets." There is no present or prospective market which would enable the corporation immediately to realize the full book value upon a liquidation of such property.

Plaintiff contends that the capital surplus of $200,000 created upon the reduction in capital cannot be retained by defendant corporation as a surplus or for any other purpose and that, together with interest, it must be distributed by the directors to the stockholders of record on January 31, 1940; that these stockholders have a vested right to the distribution among them of the capital surplus as of said date; that the right cannot be altered or impaired by statute passed since the corporation originally issued its stock; and that plaintiff is entitled to be reimbursed for reasonable expenses and attorney's fees.

Defendants, on the other hand, assert that the reduction in capital completed on January 31, 1940, was effected under the provisions of the Stock Corporation Law as then and now in force; that they were authorized by the Stock Corporation Law to add the amount of the retired capital to surplus; that the distribution of the $200,000 surplus is within the discretion of the board of directors; that any dividends directed to be paid out of any part of the surplus, when and if declared, must go to the stockholders of record at the time fixed by the directors for the payment of such dividend; and that attorney for plaintiff is not entitled to counsel fees to be paid out of corporate funds.

When the defendant corporation was organized in 1926, the Stock Corporation Law (§ 36, subd. 15) as amended by Laws of 1924, chapter 441, with respect to corporations whose capital stock was divided into shares of a stated par value, provided as follows: " 15. If it be proposed to reduce the amount of capital stock pursuant to subdivision (A), the certificate may provide that the excess over the amount to which capital stock is reduced shall be returned in whole or in part to the stockholders *pro rata,* at such times and in such manner as the directors shall determine * * *." Subdivision " (A) " read: " To increase or reduce the amount of its capital stock where all of the capital stock is divided into shares having a par value." (L. 1923, ch. 787.) The words " according to their respective rights " were subsequently substituted for " *pro rata.*" (L. 1927, ch. 396.) In 1929 (L. 1929, ch. 652) the Legislature amended the opening sentence of subdivision 15, section 36 of the Stock Corporation Law, so that the language of the subdivision would embrace corporations issuing shares without par value as well as those issuing shares of a fixed value. Thus, prior to 1929, there was no statutory provision for the discretionary return by directors of the retired capital to stockholders in whole or in part where, as here, the shares had no par value.

By chapter 334, Laws of 1939, the Stock Corporation Law (subd. 15 of § 36) was amended to read:

" § 36 * * *

" 15. If it be proposed to reduce the amount of capital pursuant to paragraph (G), the certificate shall provide that the surplus, if any, resulting from such reduction shall be available for any one or more of the following purposes: (a) to be used for any purpose for which surplus may be used; or (b) to be reserved and used for specified purposes; or (c) to be returned

to the stockholders, according to their respective rights, at the times and in the manner specified.'' It is this statute to which defendants point, as authorizing the action taken in connection with the reduction of capital and the retention of the resulting surplus of $200,000.

In the absence of statute upon the subject, the law in this State is settled that when the amount of the capital of a corporation has been lawfully reduced, the surplus fund actually created thereby, belongs to the stockholders, and they have the right to demand a distribution of such surplus among them in proportion to their respective shares, unless the rights of creditors are affected. (*Seeley* v. *New York National Exchange Bank,* 8 Daly, 400, affd. 78 N. Y. 608; *Strong* v. *Brooklyn Cross-Town R. R. Co.,* 93 N. Y. 426; *Jerome* v. *Cogswell,* 204 U. S. 1; *Roberts* v. *Roberts-Wicks Co.,* 184 N. Y. 257; 2 White on New York Corporations, p. 331; 11 Fletcher Cyclopedia Corporations [Perm. ed.], § 5150.) '' However, in this respect it is well settled that such right of the stockholder to share in any such reduction exists only in cases where the capital stock is reduced without constraint, and that where the reduction of the capital stock is made to meet an impairment thereof, the stockholders have no right to a distribution of any part of such funds.'' (*Harper* v. *State Bank of Paw Paw,* 21 N. E. 2d 47, 49 [Ill.]; see, also, *Strong* v. *Brooklyn Cross-Town R. R. Co., supra.*)

The leading authority upon the question is *Seeley* v. *New York National Exchange Bank* (*supra*). There the facts were closely parallel to those presented here. In directing a return to a stockholder of his proportionate share of the retired capital of a banking corporation, the trial court (8 Daly, 400) used the following apposite language (p. 402) : '' The abandonment by a corporation of all its corporate rights gives the stockholders a right to the distribution of all the net assets. Why should not an abandonment of a portion of those rights give the stockholders a right of distribution *pro tanto?* Of course, if the capital stock has been impaired, the amount to be returned to the stockholders must be diminished.

And at pages 403, 404: '' That money was paid as capital, and if it be no longer needed for that purpose, and if it be not required for the payment of debts, it has accomplished the end for which it was subscribed, and it ought to be returned to the shareholders.  *  *  *.  The return of the reduced capital to the shareholders is not, however, a subject for the exercise of a director's discretion.

'' If the retired capital be a liability of the corporation in favor of the shareholders who give up the stock that is called

in, the payment of that debt cannot lie in any man's discretion. Payment cannot be deferred because the directors believe it for a creditor's advantage to keep him out of his money.

" * * * It would be strange if capital — capital which has accomplished its mission — could be diverted from its owners, and used against their protest to build up a surplus fund, when even a dividend, once declared, cannot be." Later in *Strong* v. *Brooklyn Cross-Town R. R. Co.* (*supra*) the Court of Appeals again approved the principles enunciated in the *Seeley* case. In the *Strong* case an attempt was made to restrain payment of certificates of indebtedness to stockholders equal to the reduced amount of capital. In declining to interfere with the distribution of such excess the court held that it was the duty of the corporation to distribute to its stockholders the actual surplus created upon the reduction in capital.

That the retired capital is vested in those who had been stockholders as of the date of the capital reduction in proportion to their holdings (irrespective of whether they had later sold their shares) was determined by the United States Supreme Court in *Jerome* v. *Cogswell* (*supra*) affirming *Cogswell* v. *Second National Bank* (78 Conn. 75). Chief Justice FULLER there said (pages 7 and 8): " As a general rule, it may be admitted that where capital stock is impaired and a reduction is made merely to meet that impairment, there can be no distribution. But that is not this case, in which the stockholders of record June 9, 1900, had a right to require a distribution among them of an excess upon reduction in proportion to their respective holdings. In the language of the Connecticut Supreme Court: ' The right to receive what might ultimately be realized from the fund thus set apart became therefore *irrevocably vested* in those who were shareholders on June 9, 1900, and they or their assigns are now entitled to whatever is to be distributed from it.'

" It follows, as held, that the transfer of shares after the reduction of June 9, 1900, did not carry any right to an interest in the special trust fund, the proportionate interests therein having vested in the then shareholders as individuals. The result is unaffected by the fact that distribution in cash may have been contemplated as the assets set aside where realized upon." (Emphasis ours.)

The law declared in these cases makes it clear that at the time defendant corporation was organized and issued its stock, shareholders had a vested right to have divided among them, in proportion to the number of their shares, any excess of the actual capital on hand over the reduced amount of the

nominal capital (1 Morawetz on Private Corporations [2d ed.], § 443); that such excess belongs to those who were stockholders of record on the date of the capital reduction and that their respective interests in that fund were not assigned by subsequent sales of their stock.

We now consider the question as to whether the enactment of chapter 334 of the Laws of 1939 has altered the right of the holders of stock issued prior to its enactment. Defendant corporation filed the capital reduction certificate in conformity with the Stock Corporation Law as amended by the Laws of 1939 and by so doing seeks to avail itself of the new portion of subdivision 15 of section 36 which, upon proper compliance with the statute, permits the surplus available "(a) to be used for any purpose for which surplus may be used." Under the law existing at the time the corporate defendant issued its stock, distribution of the capital surplus was mandatory. The amendment now gives to the stockholders and directors the discretion of determining whether the capital surplus shall be retained by the corporation or returned to the stockholders. If the amendment is to be applicable to defendant corporation, the capital surplus which theretofore was the property of the stockholders as of the date of the capital reduction no longer belongs to the stockholder as an individual but goes to the corporation to be retained by it as its own property to be used as though it were earned surplus. This would mean that the retired capital would be subject to attendant risks of partial or total loss in the business of the corporation and that if ultimately distributed, this surplus would go, not to those who were stockholders on the date of the capital reduction, but to those who are stockholders when the distribution is made. Moreover, if authorization for the issuance of preferred stock were hereinafter sanctioned, the surplus created by the retired capital might be conferred upon the preferred shareholders to the detriment of the rights of those who were common stockholders in January, 1940.

Though the Legislature has for many years possessed the reserve power to alter and repeal all corporate charters (State Const. art. X, § 1; General Corporation Law, § 5), the law is settled that a statute authorizing a reduction in capital and the proceedings under it may not affect any vested right nor impair the force of any corporate obligation. (*Davison* v. *Parke, Austin & Lipscomb, Inc.,* 285 N. Y. 500, 507; *Roberts* v. *Roberts-Wicks Co., supra.*)

The extent of the legislative reserve power was considered in *Lord* v. *Equitable Life Assur. Society* (194 N. Y. 212) where the court at p. 227 said: " The right to amend a charter, however, does not include the right to take away money invested in reliance thereon, or property acquired thereunder. The power of amendment reserved by the Constitution or statutes of a State does not permit interference with property or property rights, because they are protected by the Constitution of the United States. When the Legislature has created a corporation and has given it power to acquire property, it cannot take away the property so acquired without providing for compensation." In *Breslav* v. *N. Y. & Queens Elec. Light & Power Co.* (249 App. Div. 181, affd. 273 N. Y. 593) the court reiterated the doctrine that it would be an unconstitutional exercise of the reserve power of the Legislature to enact laws which would impair or destroy vested property rights or the obligations of contracts.

We hold that the amendment adopted in 1939 could not impair the fixed and vested right of stockholders of defendant company to have returned to them their respective shares of the capital surplus of the corporation as of the date of the reduction. A stockholders' right to a *pro rata* distribution of the capital set free by the reduction of the amount of capital is a vested one beyond the reach of the Legislature. When it issued its stock, defendant corporation impliedly contracted with its shareholders that their capital contributions were invested by the latter upon the condition that any capital surplus resulting from reduction of capital would be distributed to them on the date of such reduction in proportion to their holdings. The certificate of stock expresses the contract between the corporation and the stockholders. (*Strout v. Cross, Austin & Ireland Lumber Co.*, 283 N. Y. 406, 413.) Shares of stock represent the interests which the shareholders have in the capital of the corporation and they " give the holder a fixed right in the division of the profits or earnings of a company so long as it exists, and of its effects when it is dissolved." (*Kent v. Quicksilver Mining Co.*, 78 N. Y. 159, 179.) Such right is fixed, vested and inviolable and one which may not be impaired save for public purposes and upon due compensation.

In any event, we think that the Legislature did not intend the amendment to be retroactive. A statute dealing with matters other than those of procedure will not be interpreted as retroactive unless such intent of the Legislature clearly appears from its terms. The ruling is especially adhered to when such a construction will alter the pre-existing situation of parties, or will

affect or interfere with antecedent rights. (*Addiss* v. *Selig,* 264 N. Y. 274; *People ex rel. Beck* v. *Graves,* 280 N. Y. 405, 410; *Holmes* v. *John Hancock Mutual Life Ins. Co.,* 288 N. Y. 106, 110, 112; *New York & Oswego M. R. R. Co.* v. *Van Horn,* 57 N. Y. 473, 477; *Wiedersum* v. *Atlantic Cement Products, Inc.,* 261 App. Div. 305, 308.) It was not the intent of the Legislature to have the 1939 amendment apply to pre-existing corporations. If such were its purpose, it would have so stated, just as it did in adding section 39 of the Stock Corporation Law by the Laws of 1941, chapter 691, section 1, when it provided that " The provisions of this section shall apply to all stock corporations now existing, as well as to those hereafter incorporated."

The parties herein concede that the reduction in capital from $300,000 to $100,000 was valid. The controversy relates primarily to the disposition to be made of the $200,000 capital surplus resulting from the reduction. The certificate filed by defendant corporation contains no provision relative to the time when or the manner in which the retired capital is to be distributed. Under the law, the defendant corporation would accordingly be required to distribute the surplus on January 31, 1940. For that purpose, defendants stipulate that $40,000 is immediately available. As to the balance of $160,000, plaintiff suggests that in view of the nature of the assets of the corporate defendant, a reasonable time be permitted to defendants to liquidate sufficient assets into cash. The judgment will so provide.

The claim of plaintiff for interest from January 31, 1940, upon the sums distributed is disallowed. We are of the opinion that the stockholders are not entitled thereto since a reduction of capital is in effect a voluntary liquidation of the retired capital (*Seeley* v. *New York National Exchange Bank, supra;* 5 Thompson on Corporations [3d ed.], § 3695, p. 526) and interest does not begin to accrue until the date upon which payment is ordered.

We do not regard this case as one wherein a counsel fee or disbursement may be allowed for plaintiff's attorney. Such relief is accordingly denied.

For the foregoing reasons, we hold that the $200,000 capital surplus created by the reduction should be distributed to those persons who were stockholders of record on January 31, 1940, in proportion to their then respective shares; that said distribution be made in cash, without interest, $40,000 of which is to be equitably apportioned within twenty days after entry of the

judgment herein, and the balance within such time as may be fixed by an order to be settled hereon.

Judgment is, accordingly, granted in favor of plaintiff as indicated, but without costs.

MARTIN, P. J., TOWNLEY and UNTERMYER, JJ., concur; CALLAHAN, J., dissents and votes for judgment in favor of the defendants.

Judgment directed in favor of the plaintiff as indicated in opinion, without costs. Settle order on notice.